# IN THE COURT OF APPEALS OF IOWA

No. 18-1242
Filed September 26, 2018

**IN THE INTEREST OF M.M. and C.M.,**
**Minor Children,**

**A.H., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

William E. Sales III of Sales Law Firm, PC, Des Moines, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the termination of her parental rights to C.M., born May 2014, and M.M., born March 2013.[1] The mother argues termination under Iowa Code section 232.116(1)(f) (2018) as to M.M. and section 232.116(1)(h) as to C.M. is not supported by clear and convincing evidence. She also argues termination is not in the children's best interests and the district court failed to consider the factors weighing against termination found in section 232.116(3).

**I. Background Facts and Proceedings.**

The children were first removed in April 2016 after the mother was discharged from a shelter for drug use and paraphernalia possession, leaving her and the children homeless. The children were placed in the custody of the maternal grandmother until it was discovered the maternal grandmother's husband is a registered sex offender. The children were placed in foster care for a short while until they were placed with their maternal grandfather and his wife in June. The children continue to reside with the maternal grandfather.

The children were adjudicated children in need of assistance (CINA) in June because of both parents' unresolved substance-abuse issues. The mother reported to the district court she was attending a substance-abuse treatment program, but when the department contacted the program to inquire about the mother's progress, they learned she was not a patient. The mother reported she had a substance-abuse evaluation scheduled throughout August and September, but she did not attend an evaluation in those months. The mother was arrested in

---

[1] The father's parental rights were terminated in the same action; he does not appeal.

January 2017 for providing false identification information and in March for theft. The mother completed a substance-abuse evaluation in jail. She reported the father injected her with methamphetamine before her March arrest and later reported the father physically abused her. The mother and father ended their relationship.

The mother attended a substance-abuse treatment program starting in April. In June, the mother was granted an additional six months to work toward reunification. While she successfully completed the residential portion of the treatment program, she was later discharged for breaking the rules by having a cell phone. After her discharge, she did not address her substance-abuse issues. She moved back in with her mother and was not employed. Despite repeated recommendations, the mother did not address her mental health or issues with domestic violence and did not attend therapy.

The mother reported she relapsed on methamphetamine in August and was admitted to a six-week residential substance-abuse treatment program. She later testified she lied about her relapse in order to gain admission to the treatment program because she believed it would help her regain custody. The program counselor believed the mother had relapsed, contrary to the mother's testimony. The mother successfully completed that program in November. The mother engaged in mental-health services for the first time during this treatment program but did not continue to engage in mental-health or substance-abuse services after she completed the program.

A termination hearing was held on December 13, 2017 and January 10, 2018. In December, the mother admitted the children could not be returned to her

because she lived with her mother and stepfather, who is on the sex abuse registry. At the continuation of the termination hearing in January, the mother argued the children could live with her at her mother's house because the stepfather had moved out. In July, the district court entered orders terminating the mother's parental rights to C.M. and M.M.

The mother appeals.

**II. Standard of Review**.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the factual findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.* "Grounds for termination must be prove[d] by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child." *Id.*

**III. Discussion.**

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h). The mother does not contest the first three elements of (f) or (h), but she argues the children could have been returned to her care at the time of the January termination hearing. She argues at the time the termination hearing concluded, the children could be returned to her at her mother's house because her stepfather had moved out and her mother intended to file for divorce. Further, she was employed full-time and had reengaged in substance-abuse treatment.

We must consider the children's long-term as well as immediate interests. *Id.* at 798. Short-term improvement on the eve of termination is not enough for the

children to safely return. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding "the changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (finding termination appropriate even though the mother did "display some improvement in some areas and was currently committed to sobriety"); *In re J.R.*, No. 17-0070, 2017 WL 1735914, at *2 (Iowa Ct. App. May 3, 2017) (finding termination appropriate even though the mother secured appropriate housing two months before the adjudication hearing, stating, "We find her current living situation has not been sustained long enough to show she is able to maintain it").

Here, the mother waited almost a year after her children were removed to seek substance-abuse treatment. While mental-health services have been recommended over the life of the case, the mother only engaged in services when she was in a residential setting. The mother's possible methamphetamine use in August is concerning. Either the mother did relapse, as her program counselor believes, or she was willing to manipulate the truth presented to the court.

The district court found the mother had no history of having her own stable housing and had concerns with the mother living with the children's grandmother. While the mother testified her mother and stepfather had broken up, the district court found they had a history of reconciliation. The mother did not grasp the danger to her children of being around a registered sex offender; she thought it would be acceptable for the children to be around the stepfather, who was convicted of molesting his own children. The district court was also skeptical of

the mother's employment, finding she had no history of maintaining regular employment since 2009.

The mother's behavior during visits was also indicative she is not ready to parent. Family Safety, Risk, and Prevention workers noted the mother was resistant to parenting suggestions and needed to be reminded several times that candy was an inappropriate snack for M.M. in light of his extensive dental work. The mother had taken her new boyfriend to see the children, despite disapproval from the children's custodians and department rules. Workers reported she was "texting her boyfriend during interactions rather than connecting with her children."

While the mother made several positive changes in the last few months before the termination hearing, it is not enough to establish the children are able to return to her care or that the changes are permanent. We find the State proved the grounds for termination under section 232.116(1)(f) and (h) by clear and convincing evidence

Next, the mother argues termination is not in the children's best interests because of the bond they share. *See* Iowa Code § 232.116(2). In determining the children's best interests, we must "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* The mother also argues the district court should have applied section 232.116(3)(c) to save the parent-child relationship, which allows the court to decline to terminate the parent-child relationship when there is "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

While workers testified the children and their mother share a bond, this does not overcome the children's need for permanency. The children had been removed from the mother's care for twenty-seven months at the time of the termination order. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 465. Our legislature has limited the period in which parents can demonstrate they are capable of parenting. *J.E.*, 723 N.W.2d at 800. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). M.M. and C.M. deserve permanency and stability. Terminating their mother's parental rights is in their best interests.

We find the State proved the grounds for termination under section 232.116(1)(f) and (h) by clear and convincing evidence, no permissive factor weighs against termination, and termination is in M.M. and C.M.'s best interests. We affirm.

**AFFIRMED.**